BOARD OF WATER COMMISSIONERS OF THE CITY OF DETROIT *v.* BUTLER BROS. CONSTRUCTION CO.

1. MUNICIPAL CORPORATIONS—WATER SUPPLY—PUBLIC WORKS—ACTIONS—ASSUMPSIT.

Upon the failure or neglect of a contractor engaged in constructing a tunnel for a private corporation, to take sufficient precautions for the protection of municipal water mains, the board of water commissioners were justified in taking reasonable precautionary measures, and could recover the expense thereof in an action against the contractor.

2. SAME—EVIDENCE—MATERIALITY.

>   While it was immaterial to offer evidence of the breaking of a
>   pipe which the contractor had paid for and was not involved
>   in the action, the error was not prejudicial.

3. SAME—EVIDENCE—OPINION—INTENT.

>   Testimony of a member of the water board that the expense
>   was incurred to guard against loss of life and the danger of a
>   conflagration was proper evidence tending to show good
>   faith, and was not an opinion.

Error to Wayne; Donovan, J. Submitted December
11, 1911. (Docket No. 41.) Decided December 29, 1911.

Assumpsit by the board of water commissioners of the
city of Detroit against the Butler Brothers Construction
Company and another for expense incurred in protecting
the water pipes of said city. Judgment for plaintiff.
Defendants bring error. Affirmed.

*Russel, Campbell, Bulkley & Ledyard* (*Henry M.
Campbell,* of counsel), for appellants.

*Richard I. Lawson* and *Walter Barlow* (*P. J. M.
Hally,* of counsel), for appellee.

The board of water commissioners of the city of De-
troit is a body created by the legislature with power to lay,
construct, secure, and maintain such pipes and and aque-
ducts as shall be required to furnish a full supply of
water for public and private use in said city. In the year
1906 and thereafter, the Detroit River Tunnel Company,
through Butler Bros. Construction Company, the con-
tractors in that behalf, was engaged in constructing a
railroad tunnel under the Detroit river and under the
shores and lands bordering the river. As projected and
constructed, the tunnel crosses Jefferson avenue in the
city of Detroit about midway between Tenth and Twelfth
streets at the intersection of Eleventh street and Jefferson;
the top of the tunnel being some 37 feet below the surface
of the earth. At this point it passes under a 42-inch
water main; the top of the main being 5½ feet below the

surface of the street.  Over the water main is a sewer.
In the water main are gates, or valves, which can be
operated so as to stop the flow of water, if the necessity
for doing so arises, one at Tenth street and one at Twelfth
street.  The operation of these valves is controlled by a
key, and three men are required at each key to properly
perform the service of closing the gates.  The water main
is cast-iron pipe, laid in sections, each 12 feet long; one
end of each section being inserted into a collar upon the
end of the adjoining section, and the joints being closed
with hemp and melted lead.

In 1906, before construction of the tunnel had ap-
proached Jefferson avenue, defendant applied to the plain-
tiff board to furnish two men with keys, one for each
valve, under whose supervision the gates could be closed.
The men were furnished and were paid by the defendant
contractor until September 21, 1908.  A plan was pre-
pared for supporting the main and was submitted to and
approved by the engineer of the plaintiff board.  Before
the tunnel reached Jefferson avenue, it was deemed ad-
visable to change the plan, and the new plan was formally
submitted to the engineer of the plaintiff, and, while not
expressly approved, was not objected to.  Without going
into details, it is sufficient to say that the pipe was exposed
and was suspended clear of the surrounding soil; the
weight resting ultimately upon concrete piers which ex-
tended below the bottom of the projected tunnel and were
outside of its course.  After the pipe was exposed, levels
were frequently taken with instruments, and men were
especially designated by defendant to observe the pipe.
While the tunnel was being constructed under the street,
observations were made hourly with instruments and a
record thereof made and preserved.  The tunnel was con-
structed under the pipe in May, 1909.  The level of the
pipe was not substantially changed; the maximum change
being one-half inch on June 6, 1909, after the tunnel had
been opened under the street.  There was some, but an
inconsiderable, escape of water, easily controlled by tamp-

ing the joints. In short, the precautions taken by the contractor, at a cost of more than $9,000, were, in fact, sufficient to insure the integrity of the water main.

On September 21, 1908, the plaintiff board, acting by resolution, without consulting the contractor, put 18 of its own men to watch the pipe under the direction of the plaintiff. That is to say, three men were kept at each gate all of the time; each being on duty eight hours. The resolution of the board also directed that the cost be charged to the contractor. This force of men was continued until June, 1909, when some of the men were withdrawn, and until August 1, 1909, when they were all withdrawn. The aggregate of the charge for these men and supplies was $8,470.78. The appellants declined to pay the charge, and this suit was brought. At the trial, the jury returned a verdict for the plaintiff for the sum stated, against the defendant contractor.

Plaintiff's declaration contained two counts; one alleging an express agreement of defendant to pay the men employed by plaintiff, and the other containing the common counts in assumpsit. The trial court charged the jury that there was no evidence of an express agreement. The questions presented by the assignments of error, and discussed by counsel, are: (1) Whether a recovery as upon a quasi contract should have been permitted; (2) whether certain testimony concerning an eight-inch pipe which broke was admissible; (3) whether certain opinion evidence ought to have been received; (4) whether the charge was prejudicial to defendant.

OSTRANDER, C. J. (after stating the facts). 1. It is conceded that the duty rested on defendant to construct its tunnel without disturbing the water main. It is said that it fully performed this duty. It is argued that inasmuch as the theory of quasi contract relations of the parties rests upon the idea of such a duty, and as elaborate and successful means were taken to perform it, defendant is not liable. It may be doubted whether this statement

of the duty resting upon the defendant is complete. The extent of the duty, the enforcement of which by an action of contract is permitted by a fiction of the law, must be determined by common sense and common justice. The duty of the public authorities in the premises should not be overlooked, nor the consequences of a break in the pipe, if the precautions taken had proved insufficient. Indeed, for the purposes of argument only, the appellant assumes that precautions other than the mechanical contrivances for supporting the pipe and for restoring its disturbed level were suggested by the circumstances. The appellant recognized the propriety, if not the duty, of being prepared to close the valves in the pipe. It did this by applying to the plaintiff to place men at the valves, equipped with apparatus for closing the valves. And in the written protest made in September, 1908, to the plaintiff, the appellant was complaining, not about the propriety of being able to control the valves whenever the soil in the street should be disturbed, but that until the tunnel approached the pipe the additional precautions taken by plaintiff were unnecessary. In part the communication read:

"In our judgment these men are wholly unnecessary at present. We would, in this connection, call your attention to the fact that for the past year and a half or more you have had a watchman there at our expense and this should be a sufficient safeguard until such time as we get near to the water main with our tunnel, when we again resume the work of excavating. We shall then be glad to have you put on the men that you consider necessary, and shall be willing to assume the expense in connection therewith. We would also point out to you that there should be no necessity for having as many as eighteen men. A force of six men should be sufficient, because we will at all times have our men in the immediate vicinity who could be called upon by any of your watchmen for assistance in closing the gates, whenever required. We would, therefore, respectfully request, when the watchmen are again put on, that only two men be employed in three shifts of eight hours each, making six men for every twenty-four hours. We fully realize the risk involved if

a break should occur in this main and we are perfectly willing to stand any reasonable expense in connection therewith for the purpose of safeguarding the city's interests. We trust your honorable board will take action as herein requested."

The difference between the plaintiff and the appellant was not so much one concerning the duty owed by appellant, as it was one concerning the measures to be employed in its performance. They agreed that during a certain period, not arrived, but which did arrive, it would be proper to have more men at the valves, and that appellant ought to pay these men. They disagreed about the number of men necessary to perform the duty and whether the period had arrived when they should be put to work. We do not mean by this to say that the mere offer of appellant to employ additional men was, in the absence of its acceptance, conclusive evidence of the measure of its duty in the premises. But the offer is itself persuasive evidence of the fact that for some period of time, not arrived, greater precautions than had theretofore been taken would be required in the exercise of ordinary care. It is the theory of plaintiff and a proper legal theory, that, if appellant refused to take the ordinary care demanded by the circumstances, plaintiff had the right to do so at its expense. Whether defendant took such care, and whether plaintiff did more than the defendant should have been required to do, were not questions for the court.

2. It is alleged in the declaration, in the first count, that the defendant threatened to disturb, and did disturb, the water pipes owned by the plaintiff, which water pipes crossed and cross the course of the tunnel, and that plaintiff employed men to watch said water pipes. A witness was asked, "Do you remember when the eight-inch pipe broke?" and, over objection, answered, "It was on the morning of March 8, 1909." An officer of appellant, on cross-examination, over objection, testified that he did not protect the eight-inch pipe, that it was cheaper to let it break, and that appellant paid for it. This testimony

was commented on by plaintiff's attorney in his argument to the jury. No recovery was sought because of the breaking of the pipe, and the testimony seems to have been wholly immaterial to the issue.

3. A member of the plaintiff board testified that what induced the board to refuse to recall the men and to continue them over appellant's protest was "to guard against an appalling loss of life, and the dangers of a conflagration that were very imminent in case there was a break in the pipe." The objection was that the testimony called for by the question was immaterial and incompetent. The testimony called for was not immaterial nor incompetent. It was not opinion evidence. Appellant has given reasons for its refusal to employ more men at the valves. The good faith of plaintiff was material, and the probable results if the pipe should be broken were loss of life and loss of fire protection to a portion of the city. The witness might have answered the question more simply; but no motion was made to strike out the answer, and we think no reversible error was committed in receiving the answer which the question called for.

4. The criticisms of the charge of the court are not very specific. It is said that on the whole it was prejudicial to appellant. The eighth and ninth requests to charge might well have been given as they were prepared by counsel. The substance of them was given and correctly stated the law. The reference in the charge to the seven modern wonders of the world, and the general want of clearness and of certainty of expression, do not call for a reversal of the judgment.

Upon a careful review of the record and briefs, we are satisfied that no error of law prejudicial to defendant was committed, and, no motion for a new trial having been made, we affirm the judgment.

STEERE, MOORE, BROOKE, and STONE, JJ., concurred.